**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| In re:<br><br>**PINNACLE AIRLINES CORP.,**<br>*et al.,*<br><br>Debtors. | **Chapter 11 Case No.**<br>**12-11343 (REG)**<br>**Jointly Administered**<br><br><br>**15 Civ. 1615 (WHP)** |

**APPELLANTS' OPENING BRIEF**

**MAVRONICOLAS & DEE LLP**
**415 Madison Avenue, 18th Floor**
**New York, NY 10022**
**Tel: (646) 770-1256**
**Fax: (866)774-9005**
**Peter C. Dee**
**pdee@mavrolaw.com**

***Counsel for Appellants***
***Flight Training Creditors***

**Dated:  April 20, 2015**

## **<u>TABLE OF CONTENTS</u>**

JURISDICTIONAL STATEMENT……………………………..…………………………… 1

STATEMENT OF ISSUE ON APPEAL AND
APPLICABLE STANDARD OF REVIEW……………………..…………………………… 2

STATEMENT OF THE CASE……………………..…………………………………… 2

     Factual Background…………………………..……………………………………… 3

SUMMARY OF THE ARGUMENT……………………………..……………………….... 5

ARGUMENT…………..……………………..……………………………….…..…… 6

     A. Tuition Payment Are for Personal Use and Afforded § 507(a) Priority Status………. 6

     B. Florida Law Establishes Liability of Debtor……………………..…………… 7

     C. Debtor Need Not Receive Deposits for § 507(a)(7) Priority………………………… 8

CONCLUSION………………………..…………………………………..………… 10

i.

# TABLE OF AUTHORITIES

**Cases**

*Dubos v. Jones*, 34 Fla. 539, 554-555 (Fla. 1894) ……………………………………………… 7-8

*In re: Four Star Financial Services, Inc.*, 444 B.R. 428 (Bankr. C.D. Cal, 2011) …………….8-9

*In re Longo*, 144 B.R. 305 (Bankr.D.Md.1992) ……………………………………………… 6

*Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721 (M.D. Fla. 2000) ……………………… 7

*In re Reisman*, 149 B.R. 31, 38 (Bankr. S.D.N.Y. 1993) …………………………………..…… 9

*Santovenia v. Confederation Life Ass'n*, 460 F.2d 805 (5th Cir. 1972) ………………………… 7

*In re Salazar*, 430 F.3d 992, 997 (9th Cir. 2005) …..…………………………………………...6

*Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*,
  673 F.3d 180 (2d Cir. 2012) ……………………………………………………….. 7

*In re WW Warehouse, Inc.*, 313 B.R. 588 (Bankr.D.Del. 2004) ………………………………… 6

**Statutes**

11 U.S.C. § 507 ………………………………………………………....2, 5, 6, 8, 9

11 U.S.C. § 523 …………………………………………………………… 9

11 U.S.C. §1107 ………………………………………………………… 2

11 U.S.C. §1108 ………………………………………………………… 2

28 U.S.C. § 157 ………………………………………………………... 1

28 U.S.C. 158 ………………………………………………………… 1

28 U.S.C. § 1334 ……………………………………………………… 1

**Other**
*Black's Law Dictionary* (9th ed. 2009).

## JURISDICTIONAL STATEMENT

The bankruptcy court had subject-matter jurisdiction pursuant to 28 U.S.C. § 1334 as the Debtors, Pinnacle Airlines Corp. and its subsidiaries, commenced a voluntary case under chapter 11 of the Bankruptcy Code on April 1, 2012, as core proceeding pursuant to 28 U.S.C. § 157(b).

This Court has jurisdiction over this appeal pursuant to 28 U.S.C. 158(a)(1) as an appeal from a final order of the United States Bankruptcy Court for the Southern District of New York. The Bankruptcy Court entered an Order on December 30, 2014 (filed as Dkt No. 1329)1 pursuant to legal conclusions set forth orally on December 16, 2014 (Dkt. No. 1327, Transcript p. 17-21) (Dkts. 1327 and 1329 together the "Order"), resulting in the reclassification the priority portion of the claims of the Appellants, Paolo Afonso, Michael Babka, Omer Bechor, Ted Beechinor, Freeman Cooper, Andrew Dee, Joseph Depietto, Guilherme Desouza, David Ferguson, Luis Gomez, Debbie Haas, Jason Hall, Michael Hoefnagel, Chris Hulstine, Naveen Karla, William Lang, Roger Maharaj, Chris Maks, Fabrice Malary, Ben Mandell, Edward Marcinko, David Marcum, Travis Martin, Joel Matos, Travis Middleton, Osvaldo Morales, Victor Oliveira, Rudy Osterman, Keon Patterson, Anna Pelevina, Mauricio Rodriguez, Ramon Rodriguez, Arash Shahrabi, Michael Shannon, Justin Spencer, Michael Stahl, Craig Stern, Quinn Sullivan, Joseph Tarlo, Freddy Turcios, Robert Vanaman, Carlo Visciola, Damian Wynter, Eric Zamule, and Charles Ziegelheim, (the "**Flight Training Creditors**" or "**Appellants**").

Appellants filed a Notice of Appeal on January 13, 2015 (Dkt. 1331) and a Statement of Issues and Designation of Record on January 27, 2015 (Dkt. 1333).

---

1 References to "Dkt. No. __" are to the bankruptcy docket in the lead matter below Case No. 12-11343.

## STATEMENT OF ISSUE ON APPEAL AND
## APPLICABLE STANDARD OF REVIEW

Whether the bankruptcy court erroneously concluded that the term "arising from the deposit" found in 11 U.S.C. § 507(a)(7) is so narrow as to exclude pre-petition deposits made to a non-debtor entity because that entity held itself out to be a partner with the debtor, and the debtor permitted itself to be held out as such, and the depositor acted on such holding out.

This issue of law is reviewed *de novo*.


## STATEMENT OF THE CASE

On April 1, 2012 Pinnacle and each of its affiliates (collectively, the "**Debtors**") commenced with the bankruptcy court a voluntary case under chapter 11 of the Bankruptcy Code. The Debtors operated their businesses and managed their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. The Cases were jointly administered pursuant to rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

On August 6, 2012, each Flight Training Creditor filed a claim in the amount of $1,000,000 on account of a consumer fraud in connection with an airline training program operated by Jet University Inc. ("**Jet U**") Attached to all but two of the Flight Training Creditors' Claims is a copy of the applicable Complaint, in which both Jet U and Pinnacle are named defendants. Additionally, each Jet U Plaintiff Claim indicated that $2,600 of the claim was on account of deposits toward the purchase, lease or rental of property or services for personal, family or household use and, thus, entitled to priority status under section 507(a)(7) of the Bankruptcy Code.

The bankruptcy court sustained Debtors' Objection (Dkt. 1314; Dkt. 1321, Declaration in Support; Dkt. 1322, Response in Support) to the priority portion of the Flight Training Creditors' claims (Dkt. 1320, Joint Response of Flight Training Creditors) by order entered on December 30, 2014 (Dkt No. 1329) pursuant to legal conclusions set forth orally on December 16, 2014 (Dkt. No. 1327, Transcript).

**Factual Background**

Before Pinnacle filed this action, the Flight Training Creditors (except David Ferguson and Karla Naveen) were plaintiffs who commenced three actions by filing complaints between November 2011 and February 2012 in the State of Florida, 11th Judicial Circuit in and for Miami-Dade County (the "**Florida Complaints**").  The Florida Complaints named a number of defendants including Jet U and Pinnacle (The Florida Complaints are annexed as Ex.'s D, E, F. to Reorganized Debtor's Supplemental Objection to the Allowance of the Priority Portion of the Claims of the JetU Plaintiffs, Dkt. 1314).     The Flight Training Creditors allege in the Florida Complaints that defendants Jet University, Inc., and others committed, *inter alia*, fraud, breach of contract, violations of Florida's Unfair and Deceptive Trade Practices Act, civil conspiracy, violations of Florida RICO Act, and negligent misrepresentation.

The Florida Complaints contain specific factual allegations in support of each of the claims, outlining a complex fraudulent scheme perpetrated by Jet U and its co-defendants to the detriment of the Flight Training Creditors.  The Florida Complaints identify facts supporting Pinnacle's vicarious and agency based liability as to Jet U, including Jet U's public representation to prospective students that it offered a job guarantee and that Pinnacle was its partner airline underwriting part of the cost of training with Jet U; Jet U's use of Pinnacle training materials in flight training instruction; and Pinnacle's representation on its website that

Jet U's program was designed for Pinnacle Airlines and was the fastest way to airline employment.  (Dkt. 1314, Ex. D (Florida Complaint) at ¶¶ 18-25, 173-187).

Pinnacle's website referred interested applicants to the Jet U "program designed for Pinnacle Airlines".  (Dkt. 1320, Ex. 1).  In a typical recruitment email dated June 29, 2006 from the Jet U admissions director to Flight Training Creditor Edward Marcinko with attached Jet U recruitment brochure, Jet U referred to its "Pinnacle Airlines training program" and with which Jet U claims to be "partnered by Pinnacle (they are so on board with us that they will be sending their instructors down to our facility to teach portions of the course) . . . ."  (Dkt. 1320, Ex. 2)  The end of the recruitment brochure refers to the "Airline Funded" portions of the training.  *Id.*

Heath Cohen, the owner of Jet University, confirmed Jet U's relationship with Pinnacle Airlines while under oath in connection with his personal bankruptcy proceedings on September 24, 2010:

> Q.    What was the relationship between Jet U and Pinnacle?
> A.    The relationship was we provided candidates for them to hire into their airline.
> Q.    Okay.  Was there a written contract between Jet U and Pinnacle?
> A.    Near the end there was.
> Q.    Not all the time?
> A.    No.
> Q.    Because the relationship you had with these people [Pinnacle] was working out without a contract?
> A.    There was a contract in the end more for marketing purposes because other schools were then copying my program.
> Q.    You wanted to say you had a contract with Pinnacle?
> A.    Yeah.
> Q.    And the idea was to place people that graduated from Jet University who got their pilot's license, correct?
> A.    Correct.

(Dkt. 1320, Ex. 3 at p 110)

> Q.    You mentioned before you had an airline partnership.  Is that the relationship Jet had with Pinnacle?

| | | |
|---|---|---|
| A. | Near the end we had an open, a verbal very strong bond prior to probably mid 2008 . . . . | |

(*Id.* at p 162)

| | | |
|---|---|---|
| Q. | Other than marketing that got . . . the students in to Jet U, was there any other reason for the job guarantee? | |
| . . . | | |
| A. | We had a verbal agreement based on my history and Mark's history with Pinnacle that they would accept any graduate of Jet University per our clause with our recommendation and passing through the course. . . . | |

(*Id.* at p 195-96)

| | | |
|---|---|---|
| Q. | Who was your primary contact at Pinnacle that you made the agreement to send students to? . . . | |
| A. | . . . Clive Seal, Terry Medford, Parker Davis, Cynthia Cunningham. | |
| Q. | Who made the verbal agreement with you to accept Jet University students? | |
| A. | It was not just one person.  We all went out to dinner, and Mark and I flew up there several times enhancing the relationship. | |

(*Id.* at p 205)

The Flight Training Creditors each paid tuition in advance in compliance with their enrollment agreements in exceess of $2,600.  (Dkt. 1314, Ex. D, (¶¶23, 28), Ex. E (¶¶20, 25), Ex. F (¶¶21, 26) (Florida Complaints).

## <u>SUMMARY OF THE ARGUMENT</u>

When Jet U held itself out to be a partner with the debtor Pinnacle, and Pinnacle permitted itself to be held out as such, and the Flight Training Creditors acted on such holding out by making deposits with Jet U, Pinnacle will be liable for the resulting damages, including recovery of the deposits.  Such damages "arise from the deposit" in the context of 11 U.S.C. § 507(a)(7) and the bankruptcy court erroneously ruled to the contrary.

**ARGUMENT**

Section 507(a)(7) of the Bankruptcy Code grants priority status to:

> allowed unsecured claims of individuals, to the extent of $[2,600]
> for each such individual, arising from the deposit, before the
> commencement of the case, of money in connection with the
> purchase, lease, or rental of property, or the purchase of services,
> for the personal, family, or household use of such individuals, that
> were not delivered or provided.

11 U.S.C. §507(a)(7).

The precise definition of "deposit" is not included in the Bankruptcy Code, but it has been defined as "money placed with a person as earnest money or security for the performance of a contract." *Black's Law Dictionary* (9th ed. 2009). Bankruptcy courts consistently recognize that such advance payments, or down-payments, constitute deposits under 11 U.S.C. §507(a)(7). *See, e.g., In re WW Warehouse, Inc.*, 313 B.R. 588, 595 (Bankr.D.Del. 2004) (gift certificates); *In Re Salazar*, 430 F.3d 992, 997 (9th Cir. 2005) (full advance payment for the construction of a pool)*; and In re Longo*, 144 B.R. 305 (Bankr.D.Md.1992) (tuition payments).

**A. Tuition Payment Are for Personal Use and Afforded § 507(a) Priority Status**

*In re Longo*, 144 B.R. 305 (Bankr.D.Md.1992) is squarely on point in characterizing tuition payments as deposits under § 507(a) for personal use. The debtor in *Longo*, as here, also claimed that the vocational school payments were for business purposes, rather than personal, and therefore not afforded priority protection under § 507(a). The court there disagreed, with reasoning directly applicable here: "Because of their lack of experience, and their ignorance of the debtor's credit history, the students of [debtor] would be left 'holding the bag' without a consumer deposit priority. This result is exactly what Congress intended to avoid." *Id.* at 311-12 (citing H.R. Rep. No. 595, 95th Cong., 1st Sess. 188 (1977) ("contract for lessons" is intended to be included with the priority for consumer services)).

**B. Florida Law Establishes Liability of Debtor**

Pinnacle's liability to the Flight Training Creditors for the Jet U deposits is based on Florida agency and vicarious liability principles. *See Statek Corp. v. Dev. Specialists, Inc. (In re Coudert Bros. LLP)*, 673 F.3d 180, 191 (2d Cir. 2012) (bankruptcy courts in the Second Circuit must look to the choice of law rules of the state where the underlying prepetition claim was filed). Here, a Florida court would apply the law of Florida as the state where the contracts for flight training and related services was to be performed. *See Pezold Air Charters v. Phoenix Corp.*, 192 F.R.D. 721, 724-25 (M.D. Fla. 2000) (citing *Santovenia v. Confederation Life Ass'n*, 460 F.2d 805, 810 (5th Cir. 1972)).

Under long established precedent set forth by the Florida Supreme Court, one who hold himself *or allows himself* to be held out as a partner may be held liable for the reasonable reliance of third person on that partnership:

> Parties, however, who can not be regarded as partners as between themselves, may, nevertheless, under certain circumstances, growing out of their acts, declarations and dealings, be regarded as such as to third persons. Thus a person holding himself out as a partner in a firm, **or permitting himself to be so held out, will be held liable as such as to third parties**, whatever may have been his actual relations with the firm or its members.
>
> The doctrine now in the ascendency, however, is that one not a partner in fact can not be held liable to third persons on the ground of having been held out as such, except upon the principle that where third persons have been misled by such holding out, he is equitably estopped from denying that he is a partner, and consequently he is now held liable, as a general rule, only to such persons as have been misled by or who have acted upon such holding out; or, as it is expressed by Justice Gray, in *Thompson vs. First National Bank of Toledo*, 111 U.S., 529: "A person who is not in fact a partner, who has no interest in the business of the partnership and does not share in its profits, and is sought to be charged for its debts because of having held himself out, or permitted himself to be held out, as a partner, can not be made liable upon contracts of the partnership **except with those who have contracted with the partnership upon the faith of such**

> ***holding***. In such a case the only ground of charging him as a partner is, that by his conduct in holding himself out as a partner he has induced persons dealing with the partnership to believe him to be a partner, and, by reason of such belief, to give credit to the partnership. As his liability rests solely upon the ground that he can not be permitted to deny a participation which, though not existing in fact, he has asserted, ***or permitted to appear to exist***, there is no reason why a creditor of the partnership, who has neither known of nor acted upon the assertion or permission, should hold as a partner one who never was in fact, and whom he never understood or supposed to be, a partner, at the time of dealing with and giving credit to the partnership." The same judge says further in the same case that "there may be cases in which the holding out has been so public and so long continued that the jury may infer that one dealing with the partnership knew it and relied upon it, without direct testimony to that effect." (citations omitted)

*Dubos v. Jones*, 34 Fla. 539, 554-555 (Fla. 1894) (emphasis added).

Here, the evidence proves at the very least that Jet U publicly held Pinnacle out as its partner airline in an attempt to increase student enrollment.  The Flight Training Creditors had many different flight schools to choose from but were driven to Jet U by its promise of a guaranteed job and the "Pinnacle Airlines" training program.   Pinnacle not only permitted Jet U to make these representations, but provided training materials and a link to the Jet U program from its website. See Dkt. 1314, Ex. D (Florida Complaint) at ¶¶ 18-25, 173-187; (Dkt. 1320, Ex.'s. 1-3) .

### C. Debtor Need Not Receive Deposits for § 507(a)(7) Priority

By its plain and unambiguous text, section 507(a)(7) grants priority status for allowed unsecured claims "arising from the deposit" of money "in connection with" the purchase of services.  This broad consumer protection language in no way suggests that Congress intended to exclude claims based on vicarious or agency principles from priority protection under (a)(7).  In *In re: Four Star Financial Services, Inc.*, the court found that "in cases where a down payment has been made to an original vendor or lender before the [contract] was assigned . . . the court

should calculate the amount the claimant is entitled to recover based on the total amount paid to all parties in the chain of ownership of the [contracts] in issue." 444 B.R. 428, 434 (Bankr. C.D. Cal, 2011).  "[T]he statute does not contain the words 'to the debtor' in reference to [deposit] payments" and thus "priority established by § 507(a) is not limited to payments and/or deposits received directly by [debtor] . . . ." *Id.*

Moreover, § 507(a) must be read in the context of the other parts of § 507, particulary § 507(d), where Congress did express its limiting intent by excluding only subrogee creditors (which Flight Training Creditors are not) from priority protection.  Thus, contrary to the bankruptcy court's holding, the deposit need not be actually received by the debtor to constitute a valid priority claim. Rather, the claim need only arise from the deposit, which it clearly does here.  The bankruptcy court's suggestion that section 507 should be narrowly construed does not suffice to alter the plain language therein.

In a similar context, agency principles have been found sufficient to protect victims of fraud from the discharge of debts under 11 U.S.C. § 523(a)(2) on the grounds that, while a debtor may be unaware of the precise wrongful acts of an agent, it is nevertheless liable "under general principles of agency law." *In re Reisman*, 149 B.R. 31, 38 (Bankr. S.D.N.Y. 1993).

**<u>CONCLUSION</u>**

For the foregoing reasons, this Court should reverse the bankruptcy court's reclassification of the priority portion of the Flight Training Creditors' claims to unsecured claims.

Dated:  New York, New York
    April 21, 2015

> Respectfully submitted,
>
> MAVRONICOLAS & DEE LLP
>
> By:____/s/ Peter C. Dee_____
> Peter C. Dee
> 415 Madison Avenue, 18th Floor
> New York, New York 10017
> Tel:  (646) 770-1256
> Fax:  (866) 774-9005
> Email:  pdee@mavrolaw.com
>
> *Counsel to Flight Training Creditors*